IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JENNIFER DRURY, | ) | |
| by her Guardian, Mary Pellman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-3024 |
| | ) | |
| BARRY MARAM, Director of the | ) | |
| Illinois Department of Health Care | ) | |
| and Family Services, and | ) | |
| CAROL L. ADAMS, Secretary of the | ) | |
| Illinois Department of Human | ) | |
| Services, in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendants' Motion to Stay (d/e 20). Plaintiff has filed a Memorandum of Law in Response to Motion to Stay (d/e 22). For the reasons stated below, the Motion is allowed.

## FACTS

For purposes of this Motion, the Court accepts the Complaint's (d/e 1) allegations as true. Plaintiff Jennifer Drury is a 23-year-old woman who suffers from moderate mental retardation and complete quadriplegia and

1

paralysis below the neck. Drury must use a tracheostomy to breathe. Her reliance on a tracheostomy necessitates one-on-one assistance from an individual trained and knowledgeable in tracheostomy care. She currently lives with her mother in a home Habitat for Humanity designed and built to suit her needs.

Drury is eligible for Medicaid. States participating in Medicaid have the option to cover individuals needing care, which Medicaid would pay for in an institution, through home or community-based services instead. 42 U.S.C. § 1396n(c)(1). They do so by obtaining waivers from the federal Secretary of Health and Human Services called Home and Community-Based Services waivers. Each state must designate a particular agency to administer its Medicaid program. In Illinois, the Illinois Department of Health Care and Family Services (IDHFS) does so. IDHFS and the Illinois Department of Human Services (DHS) Division of Developmental Disabilities work together in granting these waivers to individuals with developmental disabilities. The DHS Division of Developmental Disabilities determines eligibility and provides funding for waiver-based services. The DHS Division of Developmental Disabilities does not consider individuals needing 24-hour nursing care eligible for waivers.

Before Drury turned 21, the Illinois DHS Division of Specialized Care for Children provided her 12 hours each day of in-home nursing care under a Medicaid Home and Community-Based Services waiver for medically fragile children. Drury's mother provided her care for the rest of each day. Drury's mother is not a nurse, but she learned to provide care regarding Drury's tracheostomy.

Because Drury's Division of Specialized Care for Children services were available only before she turned 21, Drury's mother applied, shortly before Drury's twenty-first birthday, for a waiver for Community Integrated Living Arrangement services through the DHS Division of Developmental Disabilities. The Pre-Admission Screening agency, Central Illinois Service Access, found her eligible and connected her with Bethesda Lutheran Services (Bethesda), an in-home services provider. Bethesda determined that it could serve Drury in her own home by providing her a nurse trained in tracheostomy care and skills acquisition instruction. Bethesda submitted a funding request to the Illinois DHS Division of Developmental Disabilities.

The DHS Division of Developmental Disabilities, however, denied Bethesda's funding request. It advised that it could not authorize the

amount of nursing support requested and told Drury's mother to apply for services through a sister agency, the Illinois DHS Division of Rehabilitation Services.

Drury's mother did so, but the DHS Division of Rehabilitation Services agreed to provide only a portion of the requested services. It advised her that while it could provide some nursing services, it could not provide 16 hours a day. Moreover, it does not provide skills acquisition training. Drury's mother accepted the reduced services offered, which apparently amounted to 7 hours of nursing care a day, but she also asked the DHS Division of Developmental Disabilities to reconsider its denial of Bethesda's funding request. See Complaint (d/e 1), ¶ 37.

In May of 2006, the DHS Division of Developmental Disabilities reversed its denial of Bethesda's funding request but agreed to provide funding only for 3.5 hours of in-home nursing services a day. Bethesda in turn asked the DHS Division of Developmental Disabilities to reconsider funding 16 hours per day of in-home nursing care. The DHS Division of Developmental Disabilities refused, and Drury's mother filed a request for an Administrative Hearing before the IDHFS.

During the course of the administrative proceedings, the DHS

Division of Developmental Disabilities again reevaluated the level of funding it would provide for Drury's care. It found that she needed 24-hour nursing services and thus was ineligible even for a low-level of in-home care under a Medicaid Home and Community-Based Services waiver. The DHS Division of Developmental Disabilities formally denied Drury's request for Community Integrated Living Arrangement funding. It advised that Drury should seek care in a nursing home or similar institution. On November 22, 2006, after an administrative hearing, the IDHFS issued a final order upholding the DHS Division of Developmental Disabilities' denial of services.

On December 20, 2006, Drury, through her mother, filed this 2-count Complaint against the Director of the IDHFS, Barry S. Maram, and the Secretary of the Illinois DHS, Carol L. Adams, in the Sangamon County Circuit Court. Defendants removed it to this Court January 23, 2007.

In Count I, Drury alleges that the IDHFS improperly upheld the DHS Division of Developmental Disabilities' denial of services. The Administrative Hearing Officer agreed with the DHS Division of Developmental Disabilities that Drury needed 24-hour nursing care, which rendered her ineligible for a Medicaid Home and Community-Based

Services waiver. Drury alleges that the Hearing Officer incorrectly determined that a need for 24-hour nursing care is the same as a need for 24-hour care. Drury concedes that she does need 24-hour care but maintains that she does not need 24-hour *nursing* care. Thus, she argues, her mother can care for her for a portion of the day, and a nurse can provide 16 hours of nursing care; under such an arrangement, she argues, she is eligible for a Medicaid Home and Community-Based Services waiver. Drury asks the Court to reverse the IDHFS administrative decision and enter a finding that she is eligible for in-home services.

In Count II, Drury alleges that Defendants violated the Americans with Disabilities Act (ADA), which prohibits public entities from discriminating against qualified persons with disabilities in the delivery of services. See 42 U.S.C. § 12132. She also alleges that Defendants violated the Rehabilitation Act, which prohibits recipients of federal funds from discriminating against qualified persons with disabilities by, among other things, enacting policies or engaging in practices that unjustifiably segregate persons with disabilities in institutions. See 29 U.S.C. § 794(a). Under both the ADA and the Rehabilitation Act, public entities must administer services to qualified individuals in the most integrated setting appropriate

to their needs.  See 28 C.F.R. §§ 35.130(d) & 41.51(d).  Drury asks the Court to declare that Defendants' "decisions, policies and procedures which excludes [Drury] and other developmentally disabled individuals with significant nursing needs" from in-home services under the Home and Community-Based Services waiver program violate the ADA and the Rehabilitation Act.  See Complaint (d/e 1), Prayer for Relief, A.

Defendants have moved to stay Count II while another federal case, Ligas v. Maram et al., proceeds in the Northern District of Illinois.  See U.S. Dist. Court for the Northern Dist. of Illinois Case No. 05-4331.  Ligas is a class-action lawsuit against Maram and Adams in which the plaintiffs allege that Defendants have violated the ADA and the Rehabilitation Act by failing to provide developmentally disabled individuals the option of long-term care services in the most integrated setting appropriate for their needs.  See Northern Dist. of Illinois Case No. 05-4331 First Amended Complaint (d/e 91) Counts I & II; Response to Motion to Stay (d/e 22), Exhibit 1, Northern Dist. of Illinois Case No. 05-4331 Memorandum Opinion and Order Regarding Class Certification, at 1-2.  Drury is a class member in the Ligas case.

The Ligas plaintiffs seek a declaratory judgment holding such and

7

request a permanent injunction requiring Defendants to give eligible developmentally disabled individuals the option of being placed in community settings with appropriate support instead of in institutions. <u>Northern Dist. of Illinois Case No. 05-4331 First Amended Complaint</u>, Prayer for Relief Part C; <u>Response to Motion to Stay</u>, Exhibit 1, <u>Northern Dist. of Illinois Case No. 05-4331 Memorandum Opinion and Order Regarding Class Certification</u>, at 2. They also seek to compel Defendants to enact standardized policies regarding community placement of eligible developmentally disabled individuals. <u>Northern Dist. of Illinois Case No. 05-4331 First Amended Complaint</u>, Prayer for Relief Part C; <u>Response to Motion to Stay</u>, Exhibit 1, <u>Northern Dist. of Illinois Case No. 05-4331 Memorandum Opinion and Order Regarding Class Certification</u>, at 5. Additionally, they seek to force Defendants to establish a policy of informing individuals of the possibility of community placement and of assessing individuals for community placement regardless of whether they were deemed qualified by the DHS Division of Developmental Disabilities' Pre-Admission Screening agency. <u>Northern Dist. of Illinois Case No. 05-4331 First Amended Complaint</u>, Prayer for Relief Part C; <u>Response to Motion to Stay</u>, Exhibit 1, <u>Northern Dist. of Illinois Case No. 05-4331</u>

<u>Memorandum Opinion and Order Regarding Class Certification</u>, at 6-7.

ANALYSIS

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress, but in exceptional cases, a federal court should stay a suit to await the outcome of parallel proceedings as a matter of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976). Determining whether a stay is appropriate requires a two-part analysis. First, the Court must consider whether the two proceedings, even two federal proceedings, are truly "parallel." <u>Interstate Material Corp. v. City of Chicago</u>, 847 F.2d 1285, 1287 (7th Cir. 1988). Second, if the proceedings are parallel, the Court must balance the considerations weighing in favor of, and against, a stay. <u>Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc.</u>, 180 F.3d 896, 898 (7th Cir. 1999).

"Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora. The existence of additional parties in one suit does not itself destroy parallelism." <u>Schneider Nat. Carriers, Inc. v. Carr</u>, 903 F.2d 1154, 1156 (7th Cir. 1990). Here, the

parties are the same. Ligas involves additional plaintiffs, but Drury is a class member in that case, and Maram and Adams are the only remaining Defendants in both suits.

Whether the parties are litigating substantially the same issues in the two cases is the issue, however. Cases need not be identical to be parallel, but they must involve the same central issue or issues. Interstate Material Corp., 847 F.2d at 1288; Finova Capital Corp., 180 F.3d at 898. Here, in Count II Drury asks the Court to declare that Defendants' "decisions, policies and procedures" excluding her "and other developmentally disabled individuals with significant nursing needs" from in-home services violate the ADA and the Rehabilitation Act. Complaint, Prayer for Relief, A. That is quite similar to the Ligas plaintiffs' request for a declaratory judgment holding that Defendants have violated the ADA and the Rehabilitation Act by failing to provide developmentally disabled individuals the option of long-term care services in the most integrated setting appropriate for their needs.

Drury argues, however, that the instant case's emphasis on nursing care is absent from the Ligas case. She argues that in contrast to Ligas, this case does not seek to compel Defendants to adopt any new policies or

change existing ones. Instead, she challenges Defendants' *interpretation* of its rule excluding individuals needing 24-hour nursing care from the waiver program. The Court disagrees that Drury's suit does not seek to compel Defendants to change their policies; she specifically asks the Court to declare that Defendants' "decisions, *policies* and procedures" violate the ADA and the Rehabilitation Act. Moreover, while Drury's case focuses on assessing nursing needs specifically and Ligas does not, Drury's case is encompassed by Ligas. The Ligas case challenges the Defendants' refusal to fund long-term care for developmentally disabled individuals in a community setting. It does so without regard for the level of nursing care required, but a number of the named plaintiffs discussed in the Ligas amended complaint appear to need nursing care. See Northern Dist. of Illinois Case No. 05-4331 First Amended Complaint, ¶¶ 40-48, 61-65. In addition, the challenge to Defendants' interpretation of its current rule relates to the relief sought in Count I. While these two suits are not identical, they are parallel, at least with respect to Count II here.

Moreover, a balancing of interests favors staying this action. In evaluating the merit of a stay, courts have previously considered many issues applicable here, including: (1) whether either court is more qualified to

interpret the law at issue; (2) the relative inconvenience of the court considering the stay; (3) the need to avoid piecemeal litigation; (4) the order in which the respective proceedings were filed; (5) whether the other court would adequately protect the plaintiff's rights; and (6) the relative progress of the two proceedings.  Finova Capital Corp., 180 F.3d at 898-99.

While these factors do not unanimously favor a stay here, the Court concludes that on balance, a stay would promote judicial efficiency.  First, on the side of denying a stay, this Court and the Northern District of Illinois are equally qualified to interpret the federal statutes at issue and their implementation in Illinois.  Second, Defendants have advanced no argument that this Court is inconvenient; therefore, the Court is left with the fact that Drury found the Central District the most convenient forum for her action.

Third, however, imposing a stay here would not lead to piecemeal litigation. Defendants do not contend that Drury's Count I is parallel to the claims in the Ligas action, and the Court finds that Count I involves separate, unrelated legal issues.  It requires only an administrative review of the application of current state rules to Drury's circumstances, not an evaluation of compliance with federal statutes.  It can proceed independent

12

of Count II.  Fourth, the Ligas case predated the instant one: it was filed July 28, 2005.  Fifth, the Court is convinced that the Northern District would be just as able to protect Drury's rights as this one.  And sixth, the Ligas litigation has progressed further than this one has.  Fact discovery closed in Ligas on March 1, 2008, while discovery is in its initial stages in this case.

The balancing test for a stay "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone Mem. Hosp. v. Mercury Construction Corp., 460 U.S. 1, 16 (1983).  Both sides have advanced factors favoring their positions, but the Court finds that the factors weigh more heavily on the Defendants' side.

THEREFORE, the Motion to Stay (d/e 20) is ALLOWED, with respect to Count II.

IT IS THEREFORE SO ORDERED.

ENTER:   March 27, 2008

      FOR THE COURT:

                          s/ Jeanne E. Scott
                          JEANNE E. SCOTT
                          UNITED STATES DISTRICT JUDGE